IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| SEQUAN ANTHONY FOWLER, | )    1:23-cr-165 (LMB) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss the Indictment ("Motion") filed by defendant Sequan Fowler ("defendant" or "Fowler"). In his Motion, Fowler argues that 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms, is unconstitutional under the Second Amendment of the United States Constitution as interpreted by the United States Supreme Court in New York State Rifle & Pistol Association v. Bruen, 142 S. Ct. 2111 (2022). For the reasons that follow, Fowler's Motion will be denied.[1]

I.

On March 19, 2020, officers from the Prince William County Police Department responded to the Country Inn and Suites in Woodbridge, Virginia, in response to a call about a shooting in progress.[2] Responding officers spoke with the hotel desk clerk who reported hearing gunfire and complaints of loud noises and the smell of marijuana coming from a room on the fourth floor. The officers approached the fourth floor room and, while standing by the door, overheard two male occupants discussing how much ammunition they had remaining and a

---

[1] The Court has fully considered the arguments set forth in the parties' briefs and has determined that oral argument will not aid in the decisional process. See E.D. Va. Loc. Crim. R. 47(J).

[2] Given the pretrial posture of the Motion, the background facts are derived from the criminal complaint and its supporting affidavit, [Dkt. Nos. 1, 2], the Indictment, [Dkt. No. 13], and the Government's Opposition to the Motion, [Dkt. No. 28].

firearm's slide being racked. When a woman opened the door to the hotel room, the officers ordered everyone out of the room and detained Fowler and several other occupants. In a protective sweep of the room, the officers located a firearm underneath the bed.[3] They obtained a search warrant to conduct a full search of the room and found another firearm in an air conditioning vent.[4] Both firearms had been reported stolen in Prince William County, Virginia. Subsequent DNA testing conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives revealed that defendant Sequan Fowler's DNA was present on the trigger, grip, and slide of the firearm recovered from underneath the bed.

On October 11, 2023, a grand jury returned an Indictment charging Fowler with possession of a firearm following a conviction punishable by imprisonment for a term exceeding one year,[5] in violation of 18 U.S.C. § 922(g)(1). [Dkt. No. 13].

II.

Fowler argues that the Indictment should be dismissed because 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to him because it violates the Second Amendment as interpreted by the Supreme Court in Bruen. [Dkt. No. 24]. An indictment may be dismissed if the statute on which the indictment is premised is unconstitutional. United States v. Brown, 715

---

[3] The first firearm recovered was a Smith & Wesson 9mm caliber semiautomatic pistol bearing the serial number FWY3271.

[4] The second firearm recovered was a Taurus model PT740 .40 Smith & Wesson pistol bearing the serial number SGT34940.

[5] In 2017, Fowler was convicted in Harford County, Maryland for unlawfully wearing, carrying, and transporting a handgun on public roads, a misdemeanor punishable by up to three years' imprisonment, in violation of Md. Code Ann., Crim. Law § 4-203 (2017). On September 11, 2017, Fowler was sentenced to three years in prison, suspended as to all but six months. [Dkt. No. 2]. In addition to his predicate conviction under § 922(g)(1), Fowler has an extensive criminal record from the time he was 18 years old until his detention for the instant offense, including several allegations of domestic violence, which were nolle prossed in Virginia, and convictions for petit larceny, drug offenses, and simple assault and battery. [Dkt. No.10].

2

F. Supp. 2d 688, 689 (E.D. Va. 2010); see also United States v. Riley, 2022 WL 7610264, at *3 (E.D. Va. Oct. 13, 2022); Fed. R. Crim. P. 12.

Section 922(g)(1) makes it unlawful for a convicted felon to possess a firearm or ammunition. Specifically, the statute provides:

> It shall be unlawful for any person—who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Although Fowler attempts to capitalize on the rash of challenges to longstanding firearm restrictions in the wake of what other federal courts have characterized as an "unprecedented and singularly impractical" standard articulated in Bruen,[6] his Motion disregards binding Supreme Court and Fourth Circuit precedent and runs counter to the reasoning of over 300 federal courts—including several in this district—which have upheld § 922(g)(1) in the wake of Bruen.

The Second Amendment provides that "[a] well regulated militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, the Supreme Court cabined the right protected by the Second Amendment to that of "law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 635 (2008). Heller recognized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited," id. at 626, and it clarified that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on

---

[6] United States v. Spady, 2023 WL 7706263, at *1 (E.D. Pa. Nov. 14, 2023) (McHugh, J.); see also, e.g., United States v. Nutter, 2022 WL 3718518, at *3 n.6 (S.D. W. Va. Aug. 29, 2022); United States v. Price, 2022 WL 6968457, at *4 n.3 (S.D. W. Va. Oct. 12, 2022); United States v. Holden, 2022 WL 17103509, at 7-8 (N.D. Ind. Oct. 31, 2022).

3

possession of firearms by felons," id. at 626-27, which the Court described as "presumptively lawful regulatory measures," id. at 626-27, n.26. Two years later, in McDonald v. City of Chicago, the Supreme Court invalidated a handgun ban and several related city ordinances under the Second and Fourteenth Amendments but reaffirmed that its holding in Heller "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons." 561 U.S. 742, 786 (2010) (citing Heller, 554 U.S. at 626-27).[7]

In response to the Supreme Court's decisions in Heller and McDonald, federal courts of appeals developed a two-step test to evaluate Second Amendment challenges to restrictions on firearms. This test was best described as a "history and means-end scrutiny framework," which assessed: 1) whether "the challenged law regulated activity falling outside the scope of the right as originally understood" based on its historical meaning, and 2) "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right" (the "means-end scrutiny prong"). See Bruen, 142 S. Ct. at 2126 (cleaned up). Fowler contends that the Supreme Court's decision in Bruen casts doubt on Congress's longstanding categorical regulations as to who may possess firearms, including felons like him, as well as the application of Heller and McDonald by federal courts. [Dkt. No. 24] at 2-4, 6.[8]

Bruen neither expressly overruled Heller nor invalidated Heller's or McDonald's statements about § 922(g)(1)'s presumptive validity; rather, it articulated a new two-step framework for considering constitutional challenges to firearm regulations, declining to endorse

---

[7] The McDonald Court went on to explain that the decision in Heller did not cast doubt on other longstanding regulatory measures, such as prohibitions on the possession of firearms by the mentally ill, laws forbidding the carrying of firearms in sensitive places, or laws imposing conditions and qualifications on the commercial sale of arms. McDonald, 561 U.S. at 786.

[8] Remarkably, Fowler's Motion makes no mention of the language in Heller and McDonald affirming the presumption of Congress's authority to prohibit the possession of firearms by felons. He ultimately engages with such language in his Reply brief.

the history and means-end scrutiny framework employed by most courts of appeals after Heller, including the United States Court of Appeals for the Fourth Circuit. See Bruen, 142 S. Ct. at 2125-26. The Bruen Court observed that "[s]tep one of the predominant framework is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history." Id. at 2127. But the Court "decline[d] to adopt" the second step, holding that "Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context." Id. at 2126-27.

After Bruen, courts are to first consider whether "the Second Amendment's plain text covers an individual's conduct." Id. at 2126.⁹ If a court finds that the individual's conduct is, in fact, covered by the plain text of the Second Amendment, then the burden shifts to the Government to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. at 2130. The Government need only identify "a well-established and representative historical analogue" of the challenged law, "not a historical twin." Id. at 2133 (emphasis omitted). "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" Id. at 2126 (citing Konigsberg v. State Bar. of Cal., 366 U.S. 36, 49 n.10 (1961)); see also Maryland Shall Issue, Inc. v. Moore, ___ F.4th ___, 2023 WL 8043827, at *2-3 (4th Cir. Nov. 21, 2023) ("[T]he Court [in Bruen] supplied an analysis centered on the Second Amendment's text and history.").¹⁰

---

⁹ This first step of the Bruen analysis remains substantially the same as that of the Heller analysis. See United States v. Williams, 2023 WL 6368971, at *3, n.3 (E.D. Va. Sept. 28, 2023).

¹⁰ In Maryland Shall Issue, a divided panel of the Fourth Circuit invalidated as unconstitutional part of Maryland's Firearm Safety Act of 2013, Md. Pub. Safety Code § 5-117.1, which required fingerprinting, firearms training, and a waiting period in order to obtain a firearm permit. The decision applied only to Maryland's handgun-qualification-license requirement. See 2023 WL 8043827, at *1. On January 11, 2024, the Fourth Circuit voted to grant rehearing en banc.

In articulating this standard, the Bruen Court relied on Heller's statements about the limits of the Second Amendment, emphasizing that the right to bear arms is limited to "law-abiding, responsible citizens." Bruen, 142 S. Ct. at 2131, 2156; see also id. at 2122, 2133-34, 2138, 2150 (referencing "law-abiding" citizens). Moreover, the Supreme Court reaffirmed the presumptive lawfulness of "longstanding prohibitions" relating to firearms. Id. at 2133-34 (referencing the longstanding prohibition of firearms in "sensitive places"); see also id. at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in Heller . . . about restrictions that may be imposed on the possession or carrying of guns."); id. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations," including "longstanding prohibitions on the possession of firearms by felons . . . ." (quoting Heller, 54 U.S. at 636)); id. at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) ("Like Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on that aspect of Heller's holding [on those firearm regulations deemed 'presumptively lawful']."). "[Six] of the nine Justices pointed out that Bruen was not casting any doubt on [the presumptive lawfulness of longstanding prohibitions of firearms by convicted felons] language in Heller." See Vincent v. Garland, 80 F.4th 1197, 1201 (10th Cir. 2023) (Bacharach, J.).

Because Bruen reiterates the prescriptions of Heller, it neither invalidated nor overruled Heller's language that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful." Heller, 554 U.S. at 626-27 & n.26. In his Reply, Fowler categorizes Heller's discussion of felon-in-possession laws as "dicta," and invites the Court to disregard it, [Dkt. No. 31] at 2; however, he provides no authority from the Fourth Circuit describing Heller's language as such, and the Court declines the invitation. Accordingly, the Fourth Circuit's pre-

6

Bruen decisions interpreting § 922(g)(1) under Heller and McDonald control. See United States v. Moore, 666 F.3d 313 (4th Cir. 2012); United States v. Pruess, 703 F.3d 242 (4th Cir. 2012); Hamilton v. Pallozzi, 848 F.3d 614, 626 (4th Cir. 2017). District courts in the Fourth Circuit presented with challenges similar to the one brought by Fowler routinely acknowledge this interpretation of binding circuit precedent.[11]

In United States v. Moore, the Fourth Circuit, relying on Heller's statement that laws dispossessing felons of firearms are "presumptively lawful regulatory measures," upheld § 922(g)(1) in response to facial and as-applied Second Amendment challenges. 666 F.3d at 318-19. Although the Fourth Circuit expressed some uncertainty as to whether Heller's pronouncement was based on historical understanding or "some other reason," it found that "[w]hichever meaning the Supreme Court had in mind negates a facial challenge to a felon in possession statute like § 922(g)(1)." Id. at 317 (quoting United States v. Chester, 628 F.3d 673 (4th Cir. 2010)). The Fourth Circuit in Moore also rejected the defendant's as-applied challenge, finding he was not "within the category of citizens" that Heller said possessed a right to bear arms, namely, "law-abiding, responsible citizens." Id. at 319 (quoting Heller, 554 U.S. at 635). The Fourth Circuit affirmed this line of reasoning in Hamilton v. Pallozzi, holding that "conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment." Hamilton, 848 F.3d at 626.[12]

---

[11] See, e.g., United States v. Riley, 635 F. Supp. 3d 411, 428 (E.D. Va. 2022); United States v. Bever, 2023 WL 2991870, at *5 (S.D. W. Va. Apr. 18, 2023); United States v. Williams, 2023 WL 6368971, at *13 (E.D. Va. Sept. 28, 2023); United States v. Lane, 2023 WL 5663084, at *17 (E.D. Va. Aug. 31, 2023); United States v. Finney, 2023 WL 2696203, at *3 (E.D. Va. Mar. 29, 2023); United States v. Robinson-Davis, 2023 WL 2495805, at *3 (W.D. Va. Mar. 14, 2023).

[12] "Where the sovereign has labeled the crime a felony, it represents the sovereign's determination that the crime reflects grave misjudgment and maladjustment," and "[a] felon cannot be returned to the category of 'law-abiding, responsible citizens' . . . unless the felony

In United States v. Pruess, the Fourth Circuit again considered a Second Amendment challenge to § 922(g)(1) and held that the statute was constitutional as applied to a defendant who had been previously convicted of a non-violent felony. 703 F.3d at 242-46. The court reasoned that the defendant could not "rebut the presumption of lawfulness of the felon-in-possession prohibition" and held that his conduct "fell outside the scope of the Second Amendment's protection." Id. The Fourth Circuit further explained that there is "substantial evidence that the Founders severely limited the right to bear arms, excluding from its protection a broad range of often non-violent individuals and groups deemed 'dangerous.'" Id. at 246.

In short, the Fourth Circuit's post-Heller decisions confirm § 922(g)(1)'s validity. No decision by the Fourth Circuit has expressly overruled Moore or Pruess,[13] and because those decisions did not rely on the second step of the two-step framework that Bruen abrogated, i.e., the means-end scrutiny prong, Moore and Pruess remain binding precedent that the Court must faithfully apply. Accord Finney, 2023 WL 2696203, at *3; Riley, 2022 WL 7610264, at *10 ("[T]his Court concludes that the Fourth Circuit's decisions in Moore and Pruess remain good law and control the disposition of defendant's motion to dismiss."). Although Fowler fails to mention either Moore or Pruess in his Motion, in his Reply he argues that the Fourth Circuit's opinion in Maryland Shall Issue v. Moore "renders moot the Government's reliance on Moore and Pruess' allegedly continued vitality." [Dkt. No. 31] at 6.

---

conviction is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful." Hamilton, 848 F.3d at 626 (quotation marks omitted).

[13] For the Court to refuse to apply a binding decision of the Fourth Circuit, it must ask whether a decision of the Supreme Court "specifically rejected," United States v. Williams, 155 F.3d 418, 421 (4th Cir. 1988), or "clearly undermined," Li v. Holder, 666 F.3d 147, 150 (4th Cir. 2011), the applicable Fourth Circuit precedent. The Fourth Circuit has not held that Bruen specifically rejected or clearly undermined Moore or Pruess. Even when a Supreme Court decision "abrogate[s] a portion" of applicable precedent, other parts of the precedent remain "good law." United States v. Middleton, 882 F.3d 485, 491 (4th Cir. 2018).

8

Fowler is mistaken. The majority opinion in Maryland Shall Issue does not mention the Fourth Circuit's decisions in Moore or Pruess, let alone overrule them or attempt to undermine their "continued vitality," because a three-judge panel of the Fourth Circuit may not overrule a precedential opinion of the court without a decision from the en banc court. See Payne v. Taslimi, 998 F.3d 648, 654 (4th Cir. 2021) ("Only by granting en banc review may we apply stare decisis balancing to overrule precedent set by a prior panel (or a prior en banc court)."). Thus, Moore and Pruess remain binding law because, "unlike the discretionary application of stare decisis by the Supreme Court, [the Fourth Circuit is] bound by prior panel decisions." Id. (Richardson, J.) ("To state the obvious, this means we must follow a prior panel decision even if it had abysmal reasoning, put forward unworkable commands, engendered no reliance interests, lacked consistency with other decisions, and has been undermined by later developments. Indeed, for this principle to mean anything, we must do so in exactly those cases."). Moreover, on January 11, 2024, the Fourth Circuit voted to rehear Maryland Shall Issue en banc, which vacates the decision of the three-judge panel pending disposition by the full court. See U.S. Court of Appeals for the Fourth Circuit, Local Rule 35(c) ("Granting of rehearing en banc vacates the previous panel judgment and opinion). Fowler's invocation of the now vacated decision is of no import.

Fowler also relies on three out-of-circuit cases to support his Motion. First is Range v. Attorney General, 69 F.4th 96 (3d. Cir. 2023) (en banc), in which the defendant, who previously had been convicted of making a false statement to obtain food stamps, in violation of Pennsylvania law, sought a declaratory judgment that § 922(g)(1) violated the Second Amendment as applied to him and an injunction prohibiting its enforcement against him. Initially, a three-judge panel of the Third Circuit, applying Bruen's two-step textual and

9

historical framework, rejected Range's challenge to § 922(g)(1), determining that "'the people' constitutionally entitled to bear arms are the 'law-abiding, responsible citizens' of the polity, . . . a category that properly excludes those who have demonstrated disregard for the rule of law through the commission of felony and felony-equivalent offenses, whether or not those crimes are violent." See 53 F.4th 262, 266, 285 (2022) (per curiam). The panel also concluded that "even if Range falls within 'the people,' the Government ha[d] met its burden to demonstrate that [§ 922(g)(1)'s] prohibition is consistent with historical tradition." Id. at 266.

The Third Circuit, sitting en banc, reversed the panel decision, concluding that, despite his felony conviction, Range remained "one of 'the people' who [has] Second Amendment rights." See 69 F.4th at 101-03. The majority labeled the term "law-abiding, responsible citizens" as used in Heller and Bruen as "hopelessly vague," and rejected the Government's historical analogies from the Founding Era. Id. at 101-06.

Notwithstanding Fowler's invitation to follow this out-of-circuit decision, the Court declines to adopt the unpersuasive reasoning of the Range majority. As the Range dissenters underscored, the majority embraced a "radical approach" that "tracks precisely the Fifth Circuit's deeply disturbing opinion in United States v. Rahimi," 61 F.4th 443 (5th Cir. 2023), petition for cert. granted (No. 22-915). See 69 F.4th at 116, 137 (Krause, J., dissenting); id. at 114 (Schwartz, J., dissenting) (arguing that the Range majority "downplay[ed] the Supreme Court's consistent admonishment that felon bans are 'longstanding' and presumptively lawful.'"); id. at 141 (Roth, J., dissenting) (similar). As Judge Krause admonished:

> Our district courts are left without any intelligible standard, and our citizenry will be left reeling from the consequences: a flood of motions to dismiss indictments, appeals, and reversals of § 922(g)(1) convictions; more armed felons and gun violence on our streets; less faith in elected representatives stymied in their efforts

10

> to protect the public; and less trust in a judiciary mired in formalism
> and the usurpation of legislative function.

69 F.4th at 138 (Krause, J., dissenting).

Moreover, two other circuits have already rejected the reasoning of the Range majority. See United States v. Jackson, 69 F.4th 495 (8th Cir. 2023); Vincent v. Garland, 80 F.4th 1197 (10th Cir. 2023). The majority opinion in Range also diverges from hundreds of post-Bruen decisions in federal district courts across the country. As the Government points out in its Opposition to Fowler's Motion, "[o]ver 300 district courts [ ] have ruled on § 922(g) and found it constitutional." [Dkt. No. 28] at 13; id. Ex. 1 ("Appendix A"). Fowler has cited only three district court decisions to the contrary, none of which is either persuasive or binding. See United States v. Bullock, 2023 WL 4232309, at *1 (S.D. Miss. June 28, 2023); United States v. Prince, 2023 WL 7220127, at *1 (N.D. Ill. Nov. 2, 2023); Williams v. Garland, 2023 WL 7646490, at *5 (E.D. Pa. Nov. 14, 2023).

Although the Fourth Circuit has not yet opined on the constitutionality of § 922(g)(1) since the Supreme Court handed down its decision in Bruen,[14] at least four other courts in this district have rejected the same arguments posed by Fowler. See United States v. Riley, 635 F. Supp. 3d 411 (E.D. Va. 2022) (Alston, J.); United States v. Finney, 2023 WL 2696203, at *3-4 (E.D. Va. Mar. 29, 2023) (Walker, J.); United States v. Spencer, 2022 WL 17585782, at *1 (E.D. Va. Dec. 12, 2022) (Allen, J.); United States v. Williams, 2023 WL 6368971, at *1 (E.D. Va. Sept. 28, 2023) (Hudson, J.).

Although this Court agrees with the substantial majority of its colleagues that it is "unnecessary to engage in the historical analysis test articulated in Bruen" when evaluating the

---

[14] The Fourth Circuit is currently considering a facial challenge to 18 U.S.C. § 922(g)(1) in United States v. Canada, No. 22-4519 (2023) (argued December 5, 2023).

11

constitutionality of § 922(g)(1), Spencer, 2022 WL 17585782, at *4, in the interest of completeness, the detailed historical analysis undertaken in Riley, 2022 WL 7610264, at *11-13, and the well-articulated historical analysis put forward by the United States in its Opposition to Fowler's Motion, [Dkt. No. 28] at 14-23, are adopted by this Court.

Fowler also makes three arguments with respect to his underlying offense of conviction in Maryland that he believes support dismissal of the Indictment. Maryland Criminal Code § 4-203 functions as a state prohibition on carrying concealed weapons. It provides that, absent one of several enumerated exceptions, "a person may not wear, carry, or transport a handgun, whether concealed or open, on or about the person" and, as of 2017, made this crime punishable by up to three years' imprisonment. Md. Code Ann., Crim. Law § 4-203 (2017).[15]

First, Fowler argues that § 922(g)(1) is unconstitutional as applied to him because his "underlying conviction is a non-violent misdemeanor." [Dkt. No. 24] at 11. But the violent-non-violent distinction is of no help to him given the Fourth Circuit's decision in Pruess, which held that § 922(g)(1) is valid as applied to non-violent offenses. After explaining that the First, Fifth, Seventh, Ninth, and Eleventh Circuits had rejected the argument that the "Second Amendment protects the right of non-violent felons to possess ammunition," 703 F.3d at 245, the Fourth Circuit "join[ed] [its] sister circuits in holding that application of the felon-in-possession prohibition to allegedly non-violent felons like Pruess does not violate the Second Amendment," id. at 247. Because Pruess remains precedential, the violent or non-violent nature of the felony at issue is immaterial—§ 922(g)(1) lawfully prohibits persons convicted of either violent or non-violent felonies from possessing firearms. Accord Finney, 2023 WL 2696203, at *3, n.3.

---

[15] Effective October 2023, the maximum sentence is now five years' imprisonment.

12

Second, Fowler argues that he is entitled to have the Indictment dismissed because the predicate state conviction is styled as a misdemeanor under Maryland law. As used in § 922(g)(1), and as defined in 18 U.S.C. § 921(a)(20)(B), the term "crime punishable by imprisonment for a term exceeding one year," does not include "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." Although Fowler's predicate conviction under Maryland Criminal Code § 4-203 was classified as a "misdemeanor" under Maryland law in 2017 when he was convicted, because it was punishable by up to three years in prison, it fell within the federal definition of a "crime punishable by imprisonment for a term exceeding one year." See § 921(a)(20)(B); see also United States v. Anderson, 2022 WL 815944, at *6-7 (D. Md. Mar. 17, 2022) (rejecting defendant's argument that a conviction under Md. Code Ann., Crim. Law. § 4-203 is a misdemeanor that does not fall within § 922(g)(1)'s text).

Third, Fowler argues that the Maryland statute on which his predicate conviction rests violates the Second Amendment and cannot sustain a conviction under § 922(g)(1). See [Dkt. No. 24] at 12-14. He provides scant support for his contention beyond a tenuous statement that his offense "was premised on his failure to have had a license under a scheme that Maryland courts have since stricken down." See id. at 12-13. This argument fails because Fowler has not identified a procedural avenue by which he may use a federal criminal prosecution under § 922(g)(1) to challenge the constitutionality of a state conviction for a state-law offense.[16] Moreover, the federal prohibition on possessing a firearm is triggered by "the fact of a felony

---

[16] Fowler cites to Spencer v. Kemna, 523 U.S. 1 (1998) and Sibron v. New York, 392 U.S. 30 (1968), neither of which involved a criminal defendant attempting to invalidate a federal criminal charge by collaterally attacking a prior state conviction through a motion to dismiss the federal indictment.

13

conviction," rather than the "validity of the predicate conviction" itself. Lewis v. United States, 455 U.S. 55, 61 (1980) (construing 18 U.S.C. § 1202(a)(1), another statute prohibiting possession of a firearm by a convicted felon). In Lewis, the Supreme Court reasoned that the text of the statute was directed "unambiguously" at any person convicted of a felony. Id. at 60. "No modifier is present," and "nothing suggests any restriction on the scope of the term 'convicted.'" Id. The Court further held that the "plain meaning" of the "sweeping" statutory language reflected a congressional intent "that the fact of a felony conviction imposes a firearms disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon." Id. at 60-61. Courts within the Fourth Circuit have applied the Lewis holding to cases involving other subsections of § 922(g). See, e.g., United States v. Williams, 2007 WL 4411494, at *2 (E.D. Va. Dec. 13, 2007) (citing United States v. Blevins, 802 F.2d 768, 770-71 (4th Cir. 1986) (explaining that "this court does not question the validity of the underlying state court conviction" under § 921(g)(9))).

As the Government correctly argues, the Court "need only consider whether, in fact, [Fowler] has been convicted, and if he has, if the conviction has been rendered a nullity by action of a proper authority" when Fowler possessed the firearm.[17] Cf. Blevins, 802 F.2d at 771; United States v. Kahoe, 134 F.3d 1230, 1231-35 (4th Cir. 1998) ("[T]he fact that [a petitioner's] conviction was vacated after he possessed the firearm and ammunition is irrelevant."); see also Riley, 2022 WL 5101853, at *6 (E.D. Va. Oct. 4, 2022) (Jackson, J.) (citing Kahoe in evaluating an ineffective assistance of counsel claim from a § 2255 petitioner). Fowler has provided no

---

[17] 18 U.S.C. § 921(a)(20) provides that: "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

14

evidence that his conviction in Maryland has been invalidated as of the date of his alleged conduct forming the basis of the instant federal Indictment.

Moreover, contrary to Fowler's position, no court has held that Maryland Criminal Code § 4-203 violates the Second Amendment. The applicable provision of that statute proscribes wearing, carrying, or transporting a handgun, subject to enumerated exceptions. See Md. Code Ann., Crim. Law. §§ 4-203(a), (b). One such exception is for persons who apply for and receive a permit to carry a handgun. Id. § 4-203(b)(2). Under Maryland Public Safety Code § 5-306(a)(6)(ii), a state regulatory authority was tasked with determining whether an applicant had "a good and substantial reason" to carry the handgun "as a reasonable precaution against apprehended danger." That requirement, not the criminal prohibition which serves as Fowler's predicate conviction, was abrogated by a Maryland state court after Bruen. See In re Rounds, 279 A.3d 1048, 1052 (Md. Ct. Spec. App. 2022) (finding the "good and substantial reason" requirement in Maryland Public Safety Code § 5-306(a)(6)(ii) unconstitutional).[18] Effective October 1, 2023, the "good and substantial reason" requirement was stricken from the law. See 2023 Md. Laws ch. 651. In short, In re Rounds does not expunge Fowler's state conviction under Maryland Criminal Code § 4-203, and Fowler's attempted collateral attack on § 4-203 fails under Lewis because his conviction had not been nullified as of March 19, 2020, the date on which Fowler was arrested in Woodbridge, Virginia for possessing a handgun.

---

[18] The Maryland Court of Special Appeals explained the "self-evident" similarities between [Maryland's] requirement and New York's now stricken proper cause requirement," in addition to Bruen's express reference to Maryland as one of six states that have analogous requirements to the "proper cause standards." In re Rounds, 279 A.3d at 1052 (citing Maryland Public Safety Code § 5-306(a)(6)(ii)).

15

Based on the overwhelming authority in this circuit and in most other circuits, and the historical analysis incorporated in this Memorandum Opinion, the Court rejects Fowler's as applied challenge to § 922(g)(1).[19]

III.

For these reasons, defendant Sequan Fowler's Motion to Dismiss the Indictment, [Dkt. No. 24], will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 16th day of January, 2024.

Alexandria, Virginia

/s/ *signature*
Leonie M. Brinkema
United States District Judge

---

[19] Fowler also brings a facial challenge to § 922(g)(1). To succeed in a facial challenge to a federal statute, a party "must establish that no set of circumstances exists under which the Act would be valid." United States v. Hosford, 843 F.3d 161, 165 (4th Cir. 2016) (quoting Salerno, 481 U.S. at 745 (internal quotations omitted)). In other words, a party must show that the law is unconstitutional in all applications. Id. Such challenges are "'the most difficult [ ] to mount successfully,'" Hosford, 843 F.3d at 165 (quoting Salerno, 481 U.S. at 745), and are "disfavored," Wash. State. Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008). The Court need not decide whether § 922(g)(1) is unconstitutional on its face because, as explained above, the statute may be constitutionally applied to Fowler's conduct in this case under binding Fourth Circuit precedent. Cf. Salerno, 481 U.S. at 745 (holding that a movant bringing a facial constitutional challenge must show that "no set of circumstances exists under which the Act would be valid"). Fowler acknowledges as much in his Motion. [Dkt. No. 24] at 11 ("[T]he Court need not reach that issue."); [Dkt. No. 31] at 2 (same). Consequently, Fowler's facial attack on § 922(g)(1) fails.